A07A0978. METROPOLITAN ATLANTA RAPID TRANSIT
AUTHORITY et al. v. MITCHELL.

(659 SE2d 605)

PHIPPS, Judge.

Metropolitan Atlanta Rapid Transit Authority (MARTA) and Schindler Elevator Corporation appeal the judgment entered against them upon a jury verdict in favor of Donna Mitchell, contending that the trial court should have directed a verdict in their favor with respect to her claim for attorney fees. We agree. For reasons that follow, the judgment is reversed, and MARTA and Schindler are entitled to a new trial. This case is remanded for proceedings not inconsistent with this opinion.

On December 2, 2003, Mitchell was injured when she tripped and fell when boarding an elevator at a MARTA train station. After her fall, Mitchell noticed an approximately three-inch difference between the level of the elevator floor and the level of the train station floor. Certain of MARTA's personnel performed monthly inspections of elevators on MARTA's properties. In addition, Schindler was under contract with MARTA to perform monthly maintenance on its elevators and to service them when problems were reported.

Mitchell sued MARTA and Schindler, claiming that their negligence had allowed the elevator mechanisms to open the elevator door for passenger use without first leveling the elevator floor with the train station floor. She sought to recover damages for pain and suffering, medical expenses, loss of capacity to work, as well as litigation expenses, including attorney fees.

At trial, the court denied MARTA's and Schindler's motions for directed verdict on Mitchell's claims for negligence and attorney fees. In its final charge, the court pertinently instructed the jury on damages for pain and suffering, medical expenses, and loss of capacity to work. In addition, the court instructed the jury on the recovery of litigation expenses under OCGA § 13-6-11. The verdict form required the jury to state (1) whether it was finding for the plaintiff or MARTA; (2) whether it was finding for the plaintiff or Schindler; and (3) the "amount of your damage award," if finding for Mitchell "against either or both defendants." The jury entered "plaintiff" for the first two inquiries and a dollar amount for the third inquiry.

On appeal, MARTA and Schindler contend that the trial court erred by denying them a directed verdict on Mitchell's claim for litigation expenses, specifically attorney fees. They assert that there was evidence of a bona fide controversy regarding liability because the evidence did not demand a finding that Mitchell exercised ordinary care. In addition, they assert that there was no evidence that they had acted in bad faith. MARTA and Schindler thus claim entitlement to a new trial because "a general verdict form was used, and the award of attorney[ ] fees cannot be separated from the entire award."

A motion for directed verdict shall be granted "[i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict."[1] "In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the 'any evidence' test."[2]

OCGA § 13-6-11 provides, "The expenses of litigation generally shall not be allowed as a part of the damages; but where . . . the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." "Where a bona fide controversy exists, attorney[ ] fees may be awarded under OCGA § 13-6-11 only where the party sought to be charged has acted in bad faith in the underlying transaction."[3]

We agree with MARTA and Schindler that there was a bona fide controversy regarding liability because the evidence did not demand

---

[1] OCGA § 9-11-50 (a).

[2] *Norfolk Southern Corp. v. Smith*, 262 Ga. 80, 84 (2) (414 SE2d 485) (1992) (citation omitted).

[3] *Latham v. Faulk*, 265 Ga. 107, 108 (2) (454 SE2d 136) (1995) (citation omitted).

a finding that Mitchell exercised ordinary care. MARTA and Schindler's counsel elicited testimony from Mitchell that when she entered the elevator, she was looking "straight ahead" and that had she been looking at the floor, she would have been able to see the variance. But as instructed in *Robinson v. Kroger Co.*,[4]

> an invitee's failure to exercise ordinary care is not established as a matter of law by the invitee's admission that he did not look at the site on which he placed his foot or that he could have seen the hazard had he visually examined the floor before taking the step which led to his downfall. Rather, the issue is whether, taking into account all the circumstances existing at the time and place of the fall, the invitee exercised the prudence the ordinarily careful person would use in a like situation.[5]

In this case, whether Mitchell exercised ordinary care for her own personal safety was a question for the jury to resolve.[6]

In light of a bona fide controversy, recovery of litigation expenses under OCGA § 13-6-11 required evidence of bad faith conduct by MARTA or Schindler.[7] Mitchell cites evidence that MARTA and Schindler were aware of the conditions that would cause the elevator to mislevel and that MARTA personnel had known of previous occasions when the elevator had misleveled because it was not "warmed up." Mitchell asserts that, nevertheless, MARTA and Schindler failed to "correct the hazardous condition."

The evidence showed that to function properly, the hydraulic elevator required oil at or above a certain temperature. If the temperature of the oil dropped too low, the oil would thicken and likely cause the elevator not to level properly. Cold weather and infrequent use of the elevator were factors that would cause the oil to thicken. The oil flowed to the elevator through an oil line, and an oil tank and heater, which warmed the oil, were located about 200 or 300 feet from the elevator.

It is undisputed that on the day of the incident, MARTA and Schindler understood the requirements for proper functioning of the elevator. And there was evidence that "[i]t was cold" on the day Mitchell fell. After Mitchell reported her fall to MARTA, a Schindler

---

[4] 268 Ga. 735 (493 SE2d 403) (1997).

[5] Id. at 748 (2) (b); see *Augusta Country Club v. Blake*, 280 Ga. App. 650, 656 (1) (c) (634 SE2d 812) (2006) (applying *Robinson*, supra, in reviewing correctness of ruling on motion for directed verdict).

[6] See *Robinson*, supra.

[7] *Latham*, supra.

serviceman arrived to find that the elevator was misleveling. After working on the elevator, he recorded on a service ticket, "Elevator was one-and-a-half inches above top landing. Rode elevator for 30 minutes to warm up elevator. Elevator started leveling in fine. Turned oil heater on. Adjusted valve." According to the serviceman, the valve adjustment was made to "compensate for the cold oil a little bit."

The jury found MARTA and Schindler liable for negligence, and this finding is not contested on appeal. "But mere negligence will not support an award of attorney fees based on bad faith."[8]

> [B]ad faith cannot be prompted by an honest mistake as to one's rights or duties but must result from some interested or sinister motive. Bad faith is not simply bad judgment or negligence, but it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will.[9]

Construed most favorably to Mitchell, the evidence did not authorize the jury to find that MARTA's or Schindler's conduct rose to such level. There was no showing of any interested or sinister motive, dishonest purpose, moral obliquity, conscious wrongdoing, or any other species of bad faith.[10] In the absence of any evidence of bad faith, the trial court erred by not directing a verdict against Mitchell on her claim for litigation expenses under OCGA § 13-6-11.[11]

There is no merit in Mitchell's argument that, in light of the use of the general verdict form, the issue whether the court erroneously denied MARTA's and Schindler's motions for a directed verdict was either waived or no more than harmless error.[12] Under the circumstances presented here, "the opposite of this is true: 'since the jury

---

[8] *Hartsock v. Rich's Employees Credit Union*, 279 Ga. App. 724, 727 (4) (632 SE2d 476) (2006) (citation omitted); *Rapid Group v. Yellow Cab &c.*, 253 Ga. App. 43, 49-50 (4) (557 SE2d 420) (2001).

[9] *Rapid Group*, supra at 49 (citations and punctuation omitted).

[10] See generally id. at 49-50; compare *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 343 (8) (b) (319 SE2d 470) (1984) (where evidence showed that car manufacturer had actual knowledge that if certain cars were struck from the rear they would burn, with a strong probability of resulting injury to the occupants, yet after weighing the costs of corrective action against the benefit of profits, decided not to correct this defect or warn car owners of the danger created thereby, the jury was authorized to find bad faith on the part of the manufacturer).

[11] *Latham*, supra; *Hartsock*, supra; *Rapid Group*, supra.

[12] The cases Mitchell cites to support her arguments of harmless error and waiver are inapposite. See, e.g., *Davis v. Whitford Properties*, 282 Ga. App. 143, 147 (2) (637 SE2d 849) (2006) (evidence of bad faith authorized an award for attorney fees; claim that the amount of attorney fees awarded was not authorized because the evidence submitted did not itemize the underlying work was waived, where each counsel tendered their litigation expenses into evidence without such itemization and each party "consented to the method of presenting

found a general verdict for the plaintiff against the defendant[s], the verdict cannot stand for the reason that this court cannot determine whether the verdict was entered upon a proper basis.' "[13] This result is not changed by the purported juror affidavit attached to Mitchell's appellate brief concerning whether the verdict comprised, in part, litigation expenses.[14]

MARTA and Schindler are entitled to a new trial. Because the record shows that comparative negligence was raised by the evidence and the trial court charged on that issue,

> the recovery of damages and the liability of the defendant[s] are issues which are "inextricably joined." . . . It follows that reversal of the judgment entered on a general verdict returned for [Mitchell] in [this] case in which comparative negligence will be an issue on retrial necessarily mandates that the retrial encompass both the issues of damages and liability.[15]

*Judgment reversed and case remanded. Johnson, P. J., and Mikell, J., concur.*

---

litigation expenses to the jury and made no objections to such presentation when they had the opportunity to do so"); *Trust Assoc. v. Snead*, 253 Ga. App. 475, 477-478 (2) (559 SE2d 502) (2002) (evidence authorized recovery for failure to pay pursuant to promissory note; trial court did not err in refusing to grant new trial pertaining to interest because general verdict form did not show whether interest had been included and the parties did not timely object to the form of the verdict returned); *Witty v. McNeal Agency*, 239 Ga. App. 554, 559-562 (3), (4) (521 SE2d 619) (1999) (where evidence authorized recovery on the sole theory of liability (tortious interference of contract) and where neither the pleadings nor the evidence raised a breach of contract issue, the claim that the special verdict form was "erroneous and ambiguous" because it provided only for breach of contract was waived by failure to object to such irregularity before jury was excused); *Brock v. Douglas Kohoutek, L.P.*, 225 Ga. App. 104, 108-109 (3) (483 SE2d 342) (1997) (theory of liability was supported by the evidence; claim that the plaintiff had not been damaged in the amount precisely awarded was waived by use of general verdict form); *Ploof Truck Lines v. Bennett*, 221 Ga. App. 789, 791-792 (3) (472 SE2d 552) (1996) (evidence authorized recovery for negligence; claim that the verdict form was not "proper" because it included a suggestion to counsel was waived because if form of verdict is improper, objection as to its irregularity must be made at the time the verdict is rendered).

[13] *Troncalli v. Jones*, 237 Ga. App. 10, 13 (1) (514 SE2d 478) (1999), quoting *Ga. Power Co. v. Busbin*, 242 Ga. 612, 616-617 (8) (250 SE2d 442) (1978); see *Lee v. Mercedes-Benz USA, LLC*, 276 Ga. App. 28, 30 (2) (622 SE2d 361) (2005); *Wolff v. Middlebrooks*, 256 Ga. App. 268, 271-272 (3) (568 SE2d 88) (2002).

[14] *Rivera v. Harris*, 259 Ga. 171 (1) (377 SE2d 844) (1989) (exhibits attached to an appellate brief but not appearing in the record transmitted by the trial court cannot be considered by appellate court).

[15] *Bridges Farms v. Blue*, 267 Ga. 505-506 (480 SE2d 598) (1997) (citations omitted); see *Head v. CSX Transp.*, 271 Ga. 670, 673 (4) (524 SE2d 215) (1999) (citing *Bridges*, supra, for the proposition that where comparative negligence is an issue at trial, liability and damages are so "inextricably joined" that a new trial on damages only is impermissible).

DECIDED DECEMBER 14, 2007.

*Thomas, Kennedy, Sampson & Patterson, Thomas G. Sampson II, Christy L. Bigelow*, for appellants.
*Andrews, Knowles & Princenthal, Adam P. Princenthal*, for appellee.