### A11A1605. FRENCH v. DILLESHAW.
(723 SE2d 64)

BLACKWELL, Judge.

Kevin Dilleshaw, an independent truck driver, lost the use of his flatbed trailer for several weeks as a result of an accident. Dilleshaw sued Christopher French, the driver of the other vehicle involved in the accident, to recover the earnings that Dilleshaw lost while he could not use his trailer. Following a bench trial, the court below entered judgment for Dilleshaw, awarding him both lost earnings and attorney fees, and French appeals from this judgment, contending that the evidence is insufficient to sustain these awards.[1] Upon our review of the record, we conclude that the evidence is sufficient

---

[1] Dilleshaw originally sued French in magistrate court, and after the magistrate court entered judgment for French, Dilleshaw took an appeal to the superior court, where his case

to sustain the award of lost earnings, but it does not sustain the award of attorney fees. Accordingly, we affirm in part and reverse in part.

When an appeal is taken from a judgment entered following a bench trial, we owe no deference to the way in which the court below resolved questions of law, but we accept its factual findings unless clearly erroneous,[2] *Lifestyle Home Rentals v. Rahman*, 290 Ga. App. 585 (660 SE2d 409) (2008), and we view the evidence in the light most favorable to the judgment. *Forshee v. Employers Mut. Cas. Co.*, 309 Ga. App. 621, 621 n.1 (711 SE2d 28) (2011). The evidence in this case shows that Dilleshaw, who owns his own truck and flatbed trailer, worked as an independent contractor for Landstar Ranger, Inc., a freight-hauling company. Landstar paid Dilleshaw weekly, and his gross earnings were based on the number of loads that he hauled each week and the distance that he drove. Landstar advanced certain expenses to Dilleshaw, including the costs of fuel, insurance, and certain toll charges, and when it paid him each week, Landstar reduced his gross earnings by the amount of these advances.

On June 15, 2009, Dilleshaw set out with his truck and trailer to haul a load of hazardous materials from Augusta, Georgia to Michigan. As Dilleshaw was leaving Augusta, French crashed his car into the rear of the trailer, damaging it.[3] To complete his haul, Dilleshaw secured a temporary repair of the trailer in Georgia and then made his way to Michigan. When he arrived in Michigan, Dilleshaw secured another temporary repair of the trailer, so that he could return with his truck and trailer to South Carolina. And when he finally made his way back to South Carolina, Dilleshaw took the trailer to a repair shop for permanent repairs,[4] where it remained for several weeks. During this time, Dilleshaw was without a trailer and unable to haul additional loads.[5]

When an independent truck driver is not on the road, he is not earning money, and Dilleshaw sued French for his lost earnings during the time he was without the use of his trailer, as well as attorney fees. To establish the amount of his lost earnings, Dilleshaw

---

was retried. See OCGA § 15-10-41 (b). After the superior court entered judgment for Dilleshaw, French filed an application for discretionary appeal, which we granted. See OCGA § 5-6-35 (a).

[2] Under the clearly erroneous standard, we must give "due deference to the opportunity of the trial court to judge the credibility of the witnesses," and we must accept the factual findings of the court below "if there is any evidence to sustain them." *Patel v. Patel*, 285 Ga. 391, 391-392 (1) (a) (677 SE2d 114) (2009) (citations and punctuation omitted).

[3] French admitted fault for the collision.

[4] Dilleshaw was reimbursed the costs of these repairs, both temporary and permanent, and those costs are not at issue in this case.

[5] According to Dilleshaw, he was unable to drive for about four weeks, and French does not dispute this contention on appeal.

836

presented the court below with his weekly earnings statements for a period of seventeen weeks — the nine weeks that preceded the accident, the four weeks that followed it and during which he was without the use of his trailer, and the four weeks that followed the permanent repair of his trailer — and each of these statements set out his weekly gross earnings, the expenses that Landstar had advanced, and his net earnings. According to Dilleshaw, during the weeks he was able to drive his truck, his average weekly net earnings were $1,594.17. Following a bench trial, the court below awarded $5,600 in lost earnings as compensatory damages, $1,800 in attorney fees, and $210 in court costs to Dilleshaw. French appeals, asserting that the evidence does not sustain the awards of lost earnings and attorney fees.

1. We first consider whether the evidence authorized the award of lost earnings. In a tort case, "the determination of damages rests peculiarly within the province of the [trier of fact]," see *Atlanta Oculoplastic Surgery v. Nestlehutt*, 286 Ga. 731, 734 (2) (a) (691 SE2d 218) (2010) (citation and punctuation omitted), and when the trier of fact considers consequential damages in such a case, "every particular and phase of the injury may enter into [its] consideration." *Kroger Co. v. Perpall*, 105 Ga. App. 682, 685 (3) (125 SE2d 511) (1962) (citation and punctuation omitted). When someone like Dilleshaw suffers an injury to his person or property by the tort of another and is, as a result, unable for a time to practice his profession or occupation, he is entitled, we have said before, to recover his lost earnings as an element of his damages.[6] See, e.g., *Dossie v. Sherwood*, 308 Ga. App. 185, 189 (707 SE2d 131) (2011) (independent truck driver unable to work as a result of personal injury); *Fouts v. Builders Transp.*, 222 Ga. App. 568, 577 (9) (474

---

[6] French cites the rule that lost profits can only be awarded to a business enterprise that has a proven record of profitability, see *McMillian v. McMillian*, 310 Ga. App. 735, 740 n.7 (713 SE2d 920) (2011), and he contends that the evidence here shows that Dilleshaw was losing money as an independent truck driver, so he cannot recover lost profits. That might be so, but as we understand it, the court below awarded lost earnings, not lost profits. Georgia law has long distinguished between lost earnings and lost profits. When a profitable business enterprise is rendered unable to earn profits for a time by the tort of another, it may be entitled to recover its lost profits. Although an independent truck driver is, in a sense, a business enterprise, the enterprise in this case is simply the means by which Dilleshaw carried on his vocation. Moreover, the accident did not just render Dilleshaw unable to earn profits from his trucking business, but it rendered him unable for a time to practice his vocation and earn a living as a truck driver, at least until he repaired his trailer or found another one on which to haul loads, whether as an employee of another or for himself. It is damages for the latter injury that the court in this case awarded. In cases like this one, we have said that the plaintiff is entitled to recover his "lost earnings," as distinguished from his "lost profits," and the rule about a proven record of profitability does not appertain to our analysis. See *Dossie v. Sherwood*, 308 Ga. App. 185, 187 n.8 (707 SE2d 131) (2011) (explaining distinction between lost earnings and lost profits).

SE2d 746) (1996) (saleswoman unable to work as a result of personal injury); *Mote v. Tomlin*, 136 Ga. App. 616, 618 (2) (222 SE2d 57) (1975) (carpenter and contractor unable to work as a result of personal injury); *Perpall*, 105 Ga. App. at 685-687 (3) (dentists unable to practice dentistry as a result of property damage); *Southwestern R. Co. v. Vellines*, 14 Ga. App. 674, 688-689 (2) (82 SE 166) (1914) (traveling salesman unable to work as a result of personal injury). In the case of an injury to property that renders one unable to pursue his vocation, his lost earnings can be recovered only "for that reasonable period of time which it would take him to make other arrangements for carrying on his profession," *Perpall*, 105 Ga. App. at 686-687 (3), but according to Dilleshaw, it was not feasible for him to secure another trailer while he was without the use of his own, considering the short time in which it was anticipated that the repairs would be complete.[7] Accordingly, the trier of fact was authorized in this case to award the earnings that Dilleshaw lost while he was without the use of his trailer as damages.

Dilleshaw was required, however, to prove these lost earnings with "reasonable certainty," *Dossie*, 308 Ga. App. at 188, and French argues that Dilleshaw failed to do so in two respects. First, the weekly earnings statements that Dilleshaw tendered at trial and on which he relied in his calculation of his average weekly earnings are, French says, for an arbitrary period of time and not, therefore, reasonably certain proof of what Dilleshaw might have earned during the weeks he was without use of his trailer. Second, these weekly earnings statements do not, French contends, disclose all of the expenses that, but for the accident, Dilleshaw would have incurred in the operation of his truck and trailer. We will consider these arguments in turn, but we begin with some observations about the requirement of reasonable certainty.

Reasonable certainty does not mean absolute certainty, and if absolute certainty were required, lost earnings could seldom, if ever, be proven with the requisite certainty, at least in cases in which the earnings are not invariable and fixed definitively. As this Court observed nearly a century ago, such a strict requirement of proof "might deny a sufficient remedy to one who happened to be laboring not for a fixed and definite salary, but for fees or commissions," and for this reason, the courts permit "greater latitude . . . in the matter of such proof" by requiring only that lost earnings be proven with

---

[7] Notably, French did not even argue at trial that Dilleshaw could have continued to practice his vocation during the time he was without use of his trailer by becoming employed as a truck driver for wages, much less that he should have done so. And even if that had been an issue, the trier of fact certainly might have concluded that Dilleshaw was not required to go out and find a new job, considering the limited and short time he was without his trailer.

reasonable certainty. *Vellines*, 14 Ga. App. at 688 (2). The requirement of reasonable certainty with respect to lost earnings is based on the usual and settled rule "against the recovery of vague, speculative, or uncertain damages," but it reflects the equally settled understanding that this rule "relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages." *The Pep Boys &c. v. Yahyapour*, 279 Ga. App. 674, 678 (5) (632 SE2d 385) (2006) (citation and punctuation omitted). Accordingly, this requirement permits the recovery of lost earnings, so long as they can be fixed in some amount that "comes within that authorized with reasonable certainty by the legal evidence submitted," such that "[m]ere difficulty in fixing their exact amount" is no insuperable impediment to their recovery. *Dossie*, 308 Ga. App. at 188 (citation and punctuation omitted). And our Court has acknowledged that lost earnings in cases like this one can be fixed with reasonable certainty by sufficient proof of past earnings. See, e.g., *Mote*, 136 Ga. App. at 618 (2); *Perpall*, 105 Ga. App. at 686 (3); *Vellines*, 14 Ga. App. at 688-689 (2). With these principles in mind, we now turn to the arguments advanced by French about the proof of lost earnings in this case.

As to his reliance on his weekly earnings statements for the nine weeks preceding the accident, the four weeks he was without use of his trailer, and the four weeks that followed his return to the road after the permanent repairs were done, Dilleshaw explained that the business of hauling freight by truck slows during the winter months and picks up in the summer. Dilleshaw sought to recover his lost earnings for four weeks in late June and July 2009, and the weekly earnings statements that he tendered at trial show his earnings from late April to mid-August 2009. Given the testimony about the effects of the changing seasons upon the trucking business, the record shows, we think, a reasonable basis for the selection of the weekly earnings statements upon which Dilleshaw and the court below relied. To be sure, some reasonable people might have chosen to include statements for more weeks, fewer weeks, or different weeks in their analysis of the earnings that Dilleshaw lost, but we cannot say as a matter of law that Dilleshaw was required to do so. Some things are left to the reasonable judgment of the trier of fact, and in the circumstances of this case, the weekly earnings statements tendered at trial are, we think, representative enough to permit a trier of fact to fix the amount of the lost earnings with reasonable certainty.[8]

---

[8] French argues that Dilleshaw should have proven his lost earnings by evidence of what he would have earned on particular hauls that he would have made, but did not as a result of

About the expenses, our precedents on lost earnings suggest, as French argues, that gross earnings are not recoverable, and they suggest that the court below was required to offset the gross earnings that Dilleshaw would have earned during the time he was without use of his trailer by the amount of the expenses that he would have incurred, but did not incur because he was not making hauls during that time. See *Perpall*, 105 Ga. App. at 685 (3). French contends that, even if the weekly earnings statements that Dilleshaw tendered at trial are sufficient to establish the amount of his lost gross earnings, they do not show with reasonable certainty the expenses that he saved. The statements reflect some expenses that Dilleshaw undoubtedly saved during the time he was without use of his trailer, including the costs of fuel and toll charges. Dilleshaw admitted at trial, however, that he incurs certain other costs as an independent truck driver, which the statements do not show, namely the depreciation of his truck and the costs of maintenance, supplies, travel related to maintenance, and meals. Nevertheless, as to most of these expenses, the record is silent about whether Dilleshaw avoided incurring the costs while he was without use of his trailer or whether they are, instead, in the nature of fixed costs that Dilleshaw would have incurred in any event.[9] The only expense that does not appear on the statements and that is clearly shown by the record to be incurred only when Dilleshaw is on the road is the costs of his meals, and although no evidence reflects the costs of these meals on a weekly basis, the evidence does show that they amounted to little more than $7,000 for all of 2009. The average net earnings reflected in the statements suggest that Dilleshaw might have earned several hundred dollars more during the time he was without use of his trailer than the court below awarded to him. We do not know why the court awarded him less than it otherwise might have, but perhaps it was to account for the costs of meals that Dilleshaw saved as a result

the accident, during the weeks he was without use of his trailer. That too might have been a proper way of proving his lost earnings, but it is not the only way. See *Vellines*, 14 Ga. App. at 688 ("What better evidence could be offered to establish a man's earning capacity or his skill and ability in a particular business than a statement as to his past earnings, under like conditions, during a similar period of the year, immediately prior to the period for which he seeks to recover?"); see also *Perpall*, 105 Ga. App. at 686 (3) (lost earnings can be proven "by showing the amount of time lost and the average value of such loss based on operations for a reasonable period immediately prior thereto").

[9] It is possible that some of these expenses, such as the costs of maintenance and supplies, are a function of the number of loads that Dilleshaw carries or the miles that he drives, but it also is possible that they are a function of the passage of time, regardless of the extent to which the truck has been driven during that time. Given our obligation to construe the record in the light most favorable to the judgment, we will not speculate in the absence of evidence to the contrary that they are expenses that Dilleshaw saved by not driving and, therefore, relevant to a proper calculation of his lost earnings.

of the accident. The amount that the court awarded is, we think, within the range of lost net earnings proven with reasonable certainty by the evidence, and for this reason, we affirm the award of lost earnings.

2. We cannot, however, affirm the award of attorney fees. French contends that the award of attorney fees was error because the case presented a genuine controversy with respect to the amount of damages, and we agree. Pursuant to OCGA § 13-6-11, the costs of litigation, including attorney fees, are recoverable "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." In this case, Dilleshaw alleged that, by failing to compensate him for his lost earnings, French had been stubbornly litigious and had caused him unnecessary trouble and expense, but Dilleshaw never alleged that French acted with bad faith. We have explained before that, "in a case where bad faith is not an issue, attorney fees are not authorized under OCGA § 13-6-11 if the evidence shows that a genuine dispute exists — whether of law or fact, on liability or amount of damages, or on any comparable issue." *White v. Scott*, 284 Ga. App. 87, 88 (1) (643 SE2d 356) (2007) (citation and punctuation omitted).

There clearly was a genuine dispute in this case about the amount of lost earnings that Dilleshaw was entitled to recover. At trial, Dilleshaw argued that his lost earnings were shown by the evidence to be more than $6,000, but the court awarded him less. And as we explained in Division 1, there are different ways in which reasonable people might have figured the amount of lost earnings in this case, such that the amount of damages was committed to the reasonable judgment of the trier of fact. Consequently, the evidence does not support the award of attorney fees in this case, and that portion of the judgment must be reversed. See *Carpet Transport v. Dixie Truck Tire Co.*, 185 Ga. App. 181, 183 (1) (363 SE2d 840) (1987), overruled on other grounds, *Golden Peanut Co. v. Bass*, 249 Ga. App. 224, 233-234 (2) (547 SE2d 637) (2001) (where there was a genuine dispute as to the amount due, defendant should not be penalized for litigating the issue).

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 1, 2012.

*Fulcher Hagler, John A. Davison*, for appellant.
*Warlick, Tritt, Stebbins & Murray, James S. Murray*, for appellee.